This is our second case of warning people in the state of Illinois v. Clint Forrest, 413-0621, for the appellant Whitney Price and for the appellee Ms. Shepard. You may proceed. Good morning, Your Honors Counsel. My name is Whitney Price and I represent Clint Forrest, the defendant appellant. This is a case about the exclusion of a key defense witness as a sanction for a discovery violation. The trial court in this case barred Kaylee Westerfield, a co-defendant, from testifying without considering any less severe alternatives. The trial court had no reason to impose the most severe sanction in this case because the state was on notice and there was no potential prejudice to the state. And this was a closed case. The only evidence used to convict my client was the identification of his shoes and his voice, and the jury had questions about that very evidence. Therefore, the sanction in this case denied my client Clint Forrest a fair trial. There are four factors this court should consider when determining whether the trial court abused its discretion. The first factor is the effectiveness of less severe alternatives. The second is the materiality of the witness's testimony to the outcome of the case. The third is prejudice to the other party. And the fourth is bad faith. And I'll walk through those factors for Your Honors this morning. On the first factor, less severe alternatives, it's clear the court did not consider any less severe alternatives in this case because it moved directly to the most severe sanction. If you look to the court's ruling, the court said due to the lack of disclosure, Kaylee Westerfield would not be allowed to testify. The court did not consider any less severe alternatives. We would argue that to exercise its discretion, the court had to do so. It had to make an inquiry into whether there was any potential prejudice to the state from a continuance, for example. It had to inquire into the state's preparedness because the state was currently engaged in the trial of Kaylee Westerfield when my client's case went to trial. And third, the court did not inquire into other potential sanctions that could have cured the prejudice or deterred the failure to comply. Therefore, we would argue that the first factor weighs in favor of a finding of abusive discretion. On the second factor of materiality, it is clear that Kaylee was a material witness in this case. She was a co-defendant. She was an occurrence witness who could have offered unique testimony about what happened between the fight between herself and Emily Edge, the other complainant in this case, besides Gabriel Lewis. She could have provided an account of that fight, and she was the only person that we know besides Emily who was actually engaged in that fight. Gabriel Lewis, the other complainant, was down the street. Omar did not see anything happen, Omar Navarrete. Anna Henson was inside, she testified, and Rigoberto Alvarez said he was also inside and did not see the continuation of the fight. Her testimony was crucial and critical to the defense. In addition, she could have offered testimony about the pattern of harassment that she had experienced at the hands of Gabe Lewis, which would have been relevant to Gabriel Lewis' motive to testify falsely, as well as Emily Edge's motive to testify falsely. It would have increased the plausibility of the defense's theory of the case, which was that this was a frame-up. And we know the court thought this was material because the court allowed defense counsel to inquire in Gabe Lewis' cross-examination about that pattern of harassment. So the court thought that this information was material to the case. Therefore, the second factor also weighs in favor of a finding of abusive discretion. On the third factor, prejudice to the other party. The state argued in the offer of proof that it needed an opportunity to investigate and present rebuttal witnesses. However, the state was currently prosecuting Kaylee Westerfield at the time that my client's trial began. It had every incentive to investigate and locate those rebuttal witnesses. And in effect, Kaylee Westerfield, in her own trial, could have decided to testify on the eve of her testimony. Therefore, the state had to be prepared. In addition, before jury selection, the defense notified the state that it intended to call Kaylee. And we can infer that the defense counsel notified the state before jury selection because the trial court included Kaylee Westerfield as a potential witness. So let me ask you this question. You're claiming on appeal that the trial court improperly barred this testimony, yet you required the trial at the trial court, the defendants required to provide this court with an adequate offer of proof as to what the excluded evidence would have been. Do we have an adequate offer of proof in this case? Yes, we do, Your Honor. What is it? The state argues in its brief, and I believe what you're referring to here, is that defense counsel in its offer of proof didn't make two arguments. Didn't make the argument that Kaylee Westerfield was an occurrence witness and didn't make the argument that Kaylee's testimony would have gone to show that there was a conspiracy to frame my client. We would argue that the state's argument is incorrect. In the offer of proof, defense counsel said that Kaylee Westerfield was a quote, central witness in this case. In addition, she also stated that Kaylee's testimony would have gone to Gabe's untruthfulness, to his motive to lie. She also stated that Gabe lured my client and Kaylee Westerfield out of the residence and then concocted a story about the attack. So we would argue that the offer of proof was adequate and there was no forfeiture of those issues in this case. Moving on to the fourth issue in the test limits. Did the trial court accept all these representations? The trial court did accept these representations. Well, what I would say in answer to that, Your Honor, is that the trial court made its ruling immediately after that offer of proof. It's made a two-sentence ruling, which it said because... What's the difference between an offer of proof and argument of counsel? Just musings or representations of counsel or, you know, gee, I think the evidence might show this, Judge, or where's that effect? How do we know? Well, I think that those two are one and the same. The defense counsel's argument in the offer of proof were that Kaylee was an occurrence witness by stating that she was a central witness in this case and was also that her testimony could have gone to the defense theory that this was a conspiracy. So in that offer of proof, counsel... Did the defense ever make an offer to put her on the witness stand so the record would be clear just what she would say and we wouldn't have to be guessing about it? Counsel didn't make that exact explicit statement, but we would argue, Your Honor, that that is clear. The statement is, Judge, we want to put her on the witness stand to make an offer of proof. Exactly. Did counsel do that? Counsel didn't. What counsel did was state what Kaylee's testimony would be. So the answer is no? The answer is no. Why should we accept an offer of proof based on these kinds of representations? Well, that is counsel's role, to make an offer of proof of what counsel believed Kaylee would testify to. And we can infer that Kaylee's testimony... Wait, wait, wait. Counsel's role... Counsel's not the witness. That's indeed correct, Your Honor. Okay. So the best we're talking about is hearsay representations from counsel as to what the witness would say. That's true. Yet you're asking us to reverse the trial court's judgment in this case. Why didn't counsel put the witness on the stand and say, Judge, this is the testimony that's at issue in this case and we want you to hear it? That's a good question, Your Honor. And I think we can look to the record to make an inference that Kaylee Westerfield, on the eve of trial, decided that she was going to testify in this case. We can look to the offer of proof where counsel said she was just notified that Kaylee Westerfield's counsel said she would be willing to testify, which is indeed a rare occurrence because... And, Judge, here she is. Let's bring her right in and put her on the witness stand right now. Well, I don't think we can make that inference in the record that Kaylee wasn't available to testify. What we can say is that counsel knew that Kaylee was going to offer some potentially helpful information, some potentially exculpatory information, because she agreed to forego her privilege against self-incrimination and testify in this case. Therefore, it's clear on the record that her testimony was relevant. Counsel doesn't need to make, in the offer of proof, an argument about every natural inference. Now, see, the problem is we don't know... An offer of proof is addressed to the trial court. There's an informal and a formal offer of proof. The formal offer of proof, which counsel's entitled to make, is, Judge, the state is trying to bar this testimony. We want to call this witness. We want to put her on the stand so the record shows, for your purposes, and also in the event this motion is granted and we want to appeal, there would be no question for the appellate court what testimony was at issue. That's a formal offer of proof. An informal offer of proof can be made when counsel makes representations about what the witness is going to testify to, and the state indicates, or the opposing party indicates, they'll accept that representation, and the trial court indicates, I'll accept it as well. None of that happened in this case, did it? That didn't happen in this case. And, Your Honor, I would agree that in this case a more formal offer of proof would have been helpful, but the trial court could have asked for that. The trial court could have conducted an inquiry. So it's the burden of the trial court to do that as opposed to the proponent of the evidence? The proponent of the evidence in this case made a clear argument that Caylee was a key witness. In addition, it's clear from the face of her testimony she was a co-defendant. She was an occurrence witness. In fact, there's cases that say in Illinois, in our Illinois Supreme Court, the Lynch case, that when it's clear on its face that the testimony is relevant, the counsel does not need to make an extensive offer of proof about that testimony. In this case, the offer of proof was, we would argue, complete and raised those two issues that the state argues we didn't raise, which was that she was an occurrence witness and also that she would provide testimony about the conspiracy in this case. So the court had a duty to conduct an inquiry, especially where, in this case, Caylee was an occurrence witness, a key witness, and a co-defendant. And our client had the right to present witnesses in his defense. Moving on to the fourth factor I would like to address for the court today, bad faith. It's clear that counsel in this case was not trying to effect unfair surprise, wasn't trying to deliberately ambush the state in this case because counsel disclosed to the state prior to jury selection that Caylee Westerfield was an attended witness. And if you look at the offer of proof, counsel was baffled by the fact that the state argued that they were not on notice because Caylee was all over their discovery. We would argue, your honors, that this case is on all fours with this case People v. Scott, which we cited extensively in our brief. In that case, similarly as in this case, defense counsel disclosed on the day of jury selection that they had a new witness. And in that case, the appellate court held that because the trial court could have ordered a continuance which would have cured any prejudice to the state, that it was an abuse of discretion to order the sanction in that case, which was barring that testimony. We would even argue that in the Scott case, defense counsel's lack of disclosure was even more egregious because that was a witness who wasn't even known to the state at the time. It was an investigator who was not at any of the state's discovery. So our case is clearly on all fours, and in fact a better case, to show that the court should not have imposed the most severe sanction in this case. I'd like to also address one other argument the state mentions in its brief, in its response, which is harmless error. And I've argued extensively just now, but I'll continue, that Caylee's testimony was unique. She was an occurrence witness. She could have provided unique testimony as a co-defendant about the fight that occurred between her and Emily. And she could have provided information about the conspiracy to frame my client when there were only two witnesses who implicated my client, and those two witnesses had an ax to grind. In addition, she could have provided unique testimony about the pattern of harassment, and that pattern of harassment would have increased the plausibility of my client's defense. Finally, the jury had questions about the evidence in this case. The jury had questions about the theory of accountability, and we know this because the jury submitted jury questions about my client's clothing and about his voice, whether they could convict him on accountability. The only evidence in this case used to convict my client was the identification of his shoes. Given the testimony of Edge and Lewis, how does the exclusion of Westerfield's testimony, why should that exclusion cause us to conclude that the jury would have reached a different conclusion had she been allowed to testify? After all, after Edge and Lewis testified, what else was there that Westerfield would have added that wouldn't have been accumulated? I believe your Honor is referring to the fact that Gabe testified that there was an order of protection against him, and also that there was a pending domestic battery charge. In this case, Kaylee could have provided additional facts about the pattern of harassment, the fact that Gabe ran into her car, the fact that he popped her tires, that he smashed her windshield, that he threw kitty litter into her car. This pattern of harassment that wasn't addressed at all. Does that assume any of that? Is it admissible in this case to begin with? The accusations we could assume are admissible. The accusations of harassment go to his motive to lie. But in addition, what is harmful in this case is the fact that Kaylee was an occurrence witness. She could have offered exculpatory information about what actually occurred during the fight. So whether or not the pattern of harassment was actually addressed slightly during Gabe's testimony, she had unique testimony to offer as an occurrence witness. So we would argue that this was not harmless error. In conclusion, your Honors, this is a case about the exclusion of a key defense witness. The trial court didn't consider any less severe alternatives before imposing the most severe sanction, and the court had no reason to impose that sanction because the state was on notice and there was no potential prejudice to the state. And in the case where the jury had questions, and in a closed case, this denied my client a fair trial. And we ask that this court reverse my client's convictions and remand for a new trial. There are no further questions. Did counsel suggest what lesser sanctions could be imposed if the trial court believed a sanction was necessary? Counsel didn't actually argue for less severe sanctions, but the trial court had the duty to consider those alternatives. And there's two cases in the Fourth District... Well, there are concomitant duties. We've already got to the point where you've made the offer of proof. My responsibility as a trial judge. If I don't like the offer of proof, instead of rejecting it, I have to conduct a mini-seminar on this is what you need to do. You need to actually ask me to have that witness sworn and testify outside the presence of the jury exactly what she would testify to, subject to oath and subject to being asked questions. I have to do that. A lot of trial court experience up here. Judges have a lot of things they have to do. And we do this in concert with counsel. So counsel makes a skimpy offer of proof, which would be deemed to be informal. And counsel suggests no alternative other than what the judge did. But somehow that should not be down to the detriment of the defendant in terms of, hey, you've got to help us with this trial, or defense counsel is supposed to. Well, Your Honor, I would first say that's correct, that we have a concomitant duty. But also the court has a duty to inquire before imposing the most severe sanction. The Illinois Supreme Court has said this is... I have a duty to inquire. Hey, what can I do that would serve your purpose but be nice to the state? And, you know, you want a couple hours. I'm supposed to propose that. Inquiring to the potential prejudice of Caylee being presented as a witness. That is a baseline duty, to inquire as to what the prejudice would be to the state by Caylee testifying. The court didn't do that in this case. It moved directly to the most severe sanction. So that was the least it could have done. But also to go to your second point, in this case we've also argued that this court finds that defense counsel didn't do its duty in this case, that it was ineffective assistance of counsel for failure to disclose, that that was objectively unreasonable, and that the performance in this case was not harmless beyond a reasonable doubt. So for those reasons, we ask that this court reverse my client's convictions. Are there no further questions? I see none. Fair enough. Thank you. We'll hear from you on rebuttal. Ms. Shepard. Please report, counsel. Initially, the state would like to point out that it was not before jury selection. Would you speak up a bit? So sorry. Initially, the state would like to point out that it was not before jury selection that the defense informed the state of its intent to call Westerfield. It was at the end of the day of jury selection. And the next day, the prosecutor informed the trial court, as trial was about to start, that the night before, defense counsel had informed the state that it wanted to call Westerfield. So as defendant concedes, this was a discovery violation. And, of course, this court reviews a trial court's sanction of a discovery violation for abuse of discretion. The defendant has a very high burden to me to show that it's an abuse of discretion. Let me change the circumstances slightly, Ms. Shepard. Let's assume that this was a case where Mr. Forrest was charged with some crime, and he had a co-defendant, Ferg Berfel, who was charged with the same crime. And cases were severed for trial, and so it was only going to be Mr. Forrest going to trial. And after the jury was selected, the state informs the judge that the plea agreement has been reached between the state and Mr. Berfel and his client. And Mr. Berfel is now going to be pleading guilty in exchange for facilitating the criminal justice system, and now is going to be a state's witness to testify against Mr. Forrest. And it happened this afternoon, and we want to put him on for trial during the course of this trial. And, of course, there was no discovery, provided that Berfel was going to be testifying, because until he decided to plead guilty and become a state's witness, he wasn't subject to 412 disclosure. And let's assume the defense said, I object. I'm surprised. This is bad. I know that this guy is a co-defendant. I've known him for six months. He's the co-defendant. We have all the discovery and everything else. Still, I'm surprised, and you shouldn't have let him testify. What do you think the judge would say? So, Your Honor, in your hypothetical, there was no duty to disclose him in discovery, as you say? Well, he wasn't. He's a defendant. He's a co-defendant. He wasn't disclosed, because until he pleads guilty, the state can't call him as a witness or indicate that they would. He's a separate defendant. He's going to be tried next month. The cases were separate. What do you think the defense attorney's argument that he shouldn't be permitted to testify, how do you think the trial court would deal with it? I'm surprised, Judge, says the defense counsel, because, after all, who could have seen that the co-defendant might flip and testify against my guy? Do you think the judge would buy that? Well, the cases that we have relied on and the cases that I know about say that you have to disclose. It's not a standard of, oh, you should have known. You need to disclose. Well, you have to disclose when you learn. But this guy in Ms. Westfield here is kind of a strange situation. She's a co-defendant herself and now charged with the same offense and says, I'm going to testify as a defense witness. This is not something, indeed, that would be less an expectation of this happening, considerably less in my experience, than a co-defendant flipping and turning into a state's witness. But here the defense attorney seemed like, in a reasonably timely fashion, I mean, it was that day, wasn't it, that when Ms. Westfield said, yeah, I'm going to be willing to testify for the defense, told the state's attorney, wasn't it the same thing? The prosecutor represented that it was because her counsel had okayed her to testify in the defense trial. So as the state argued against the offer of proof, the prosecutor said, you know, it's unusual for a co-defendant to testify. We were surprised by this. How surprised could he be? I mean, you know, as a matter of just fairness, how surprised can any reasonably experienced criminal lawyer, be it prosecutor or defense, be that in a case in which multiple people are charged, someone might turn witness for the other side? Usually it's for the state, but it might be, as in this case, I'm going to testify as a defense witness. And, you know, when I'm talking about, gee, Judge, I'm surprised and prejudiced, how credible is that? It's credible because the subject that she was supposed to testify about was not this offense. Nowhere in the offer of proof did defense counsel say that she was, Westfield was going to talk about this offense, about as an occurrence witness, about what happened for the events the defendant was on trial for. The most that opposing counsel points to is that defense counsel said she was a key witness in the offer of proof. All of the offer of proof had to do with all the prior bad acts, had to do with throwing the kitty litter in the car, and all of these things that, as the prosecutor pointed out, we don't even know if those things happened, when we'd have to find policemen, other witnesses, to testify to say whether or not they even happened, and whether, and we don't have time for that. I mean, that would be a surprise. If you're arguing harmless error, if I was improperly admitted because it was cumulative, which you are, and I can understand your argument, isn't that inconsistent with saying the state was surprised by this cumulative testimony? It boils down to the offer of proof, Your Honor, because when the state was presented with, okay, this is what Westerfield's going to testify, here's what she's going to testify about. It had nothing to do with, I mean, that was not developed. They talked about the prior bad acts, but they also did not connect it up with the purpose the defendant now argues on appeal that that was relevant for, and, in fact, was able to elicit all this other testimony about, the frame up there. The only thing that defense counsel argued in the offer of proof that remotely related to that purpose was the statement, that Lewis ultimately lured all the individuals out and claimed to have been attacked. The offer of proof didn't say, well, she's going to, Westerfield's going to talk about this frame up theory, there was a frame up theory. It talked about Lewis's motive to lie, and why he was out there. The evidence is going to be offered to, that there was an OP against Lewis. He had stalked her. All of these things, and it just was not what they're arguing on appeal. It's the purpose and the content of her testimony was not offered to the trial court. To what extent should we be concerned that there was no suggestion from the state or discussion by the court with any action which could be taken under these circumstances short of barring this testimony? I don't think that there should be a concern because the prosecutor did talk about how it would be prejudiced. It would have to call these other witnesses. We don't even know if these events occurred. We would have to call police officers to testify about what happened. We don't have time for that. The jury has already been selected. The court is not required to go through, as Your Honors were discussing with opposing counsel, all of these other alternatives. It's defense counsel's burden to do that. Did the state accept all of these representations made by defense counsel as being a basis for the offer of proof? I'm sorry, the state on appeal? No, the state at the trial level. Did the state at trial accept the basis? Let me be more clear. As you heard Ms. Price argue, defense counsel at trial made various representations to the trial court that Westerfield permitted to testify would testify as to the following. Did the state challenge any of that? As to whether or not that occurred, the state did say we don't know whether or not she could testify. Whether or not these representations were accurate. As to what she could testify? As to what she was going to testify to if permitted. I don't remember that the prosecutor specifically said that. The judge never asked what the state's position was on these representations? I don't remember that the judge, as I recall, the defense counsel talked about what Westerfield would testify about and made a fleeting reference to Lewis lying, or wait a minute, fleeting reference to, yeah, Lewis ultimately lured all the individuals out and claimed to have been attacked. But other than that, the content and purpose that they're arguing on appeal were not represented in the offer of proof. Then the prosecutor said, no, we didn't even, we're surprised. We didn't know that she would testify. We had no reason to know she would testify. And on top of that, we would have to call these other witnesses to rebut her testimony or talk about these events. And then the trial court said that because of the late disclosure, her testimony is barred. It seems to me, and correct me if I'm mistaken on this, I meant to ask Ms. Price this. I'll ask you and Ms. Price if my understanding is not correct to correct me. The most curious aspect of this case is that the trial court never asked the defense counsel the three initial questions that one might think would be the most important as the court decides whether to bar Worcester Field from testifying. The first is, when did counsel first become aware of Worcester Field's availability to testify? The second is, when did counsel decide she wanted to call her? And the third is, when did counsel so inform the state? It seems to me the record contains no discussion of this. The court didn't ask it. The defense counsel didn't volunteer it. The state didn't raise these issues, and I don't understand why. But the prosecutor did represent that it was the night before that the other prosecutor had been informed at the end of jury selection of defense counsel's intent to call Worcester Field. The prosecutor also talked about, apparently it was because this lateness had something to do with defense counsel for Worcester Field okaying her to testify in defendant's case. So those matters were addressed. We don't. Does the record show when defense counsel first became aware of Worcester Field's availability to testify? The record shows that the defense counsel knew about what she would have said back in December when the state… See, that's not my question. She's charged with a crime. She's not going to testify unless she consults with an attorney and decides, yeah, I'm facing with all this, I'm going to testify. Does the record show when defense counsel first became aware that Worcester Field was available to testify, that Worcester Field or her lawyer contacted defense counsel in this case and said, yeah, she's ready to testify? Does the record show that? Excuse me. I don't think it does. The most we have is what the prosecutor said about defense counsel has released her to testify. The implication would be that this was, you know, the night before because presumably… I don't know that that would be determinative, however, with respect. Would it have been helpful as well had the trial counsel said, Mr. Prosecutor, you can interview this witness, directing her to be available for interview to see what she's going to say, and then come back after you've done that and tell us what further relief, if any, you need and why? How about that as a thought? The prosecutor already represented what relief he would need, the other witnesses, and that also would have delayed the trial. And one thing that opposing counsel in their brief does not focus on, the states or the cases really do pay attention to the timing of this disclosure. And if you disclose on the morning of trial, it's very hard to show that, yes, there should be some continuance granted to interview the witness and all these other witnesses who would have to be interviewed in order to put on that testimony. But the very stuff that the state claims here is such a surprise, it's so difficult to deal with, wasn't that the very stuff that Westerfield in her own case was going to be presenting in her defense? The record doesn't show that. Isn't that a reasonable inference from what we know about this case? That it was a frame-up and all the bad things that happened, the kitty litter and the gas tank and all that? I mean, you know, and here's a co-defendant who's waiting to go to trial, right? Now, how big a surprise is it to this, oh, gee, we're surprised by all this, we have to figure out who we're going to call and what witnesses we might have in a rebuttal? This is a co-defendant in this very case. Why shouldn't I, as a trial judge hearing this, be skeptical of the state's claims that this is such a big surprise? Well, the record doesn't show what things that she would have been testifying about in her trial, and the standard is that you have to disclose that. The state is saying that it's prejudice, the trial court accepted that representation. But this would be the very same defense, the same arguments that she would be raising in her own trial. How do we know that, Your Honor? Well, this is what she had said earlier. Didn't she give a statement and talk about all this? I'm not sure what you're talking about. There's no statement in the record that I'm aware of where she talked about all these things. Well, maybe it was from the other witnesses who were talking about this whole event. In any event, it just seems to me that this is, again, and going back to my very first question, had this been a state's witness with a trial judge who barred her from testifying? Had she been a co-defendant who says, now I'm ready to facilitate the criminal justice system, and I want to tell you all about what a bad guy Clint Forrest is and how he committed this crime? I think the trial court would have barred, because the offer of proof was insufficient to show that that testimony was relevant and the purpose that she would have... Well, barred on a surprise basis. On a surprise basis. Yeah. If the defense says, wait a minute, the co-defendant wasn't disclosed as a state's witness, so we object on the grounds that we're surprised. Wouldn't the trial court... I know this trial judge said, how can you be surprised, counsel? Well... You should always expect that a co-defendant might flip. Mm-hmm. Well, that's not the standard for the abuse of discretion. The factors go through. There are four factors. We went through those in our brief. You know, that's kind of beside the point. Whether or not either side was surprised, or the state, or in your example, the defendant would be surprised, that's not what the standard would be. Rather, this has been now 45 years I've been involved in one capacity or another in the criminal justice system, and I literally don't know of an instance, and I can hardly believe one would occur, where in the hypothetical I gave you, a trial judge would bar the state from calling a co-defendant even during trial who had now pled guilty and said, I wanted to testify on the grounds that there was no disclosure of the Rule 412. Mm-hmm. I don't think it's ever happened, and it's hard for me to imagine it happening, which makes this case troubling because then we're not treating both sides the same. Okay, the trial court in this case did say, I'm going to bar it because of the late disclosure. If we just look at that statement, what you're saying has more weight, I would argue. But the standard, there's the four-factor test, and the trial court is not required to go through all of the other things or all the factors that may have gone into that, and the state did represent, this is why it's prejudicial. And the court was well aware that the jury had already been called, that it was the morning of trial, or it had been selected. How is it prejudicial? How is it prejudicial? Because, as the prosecutor said, we would have to call other witnesses to testify about these events. We don't even know if they would exist. And also, it would result in a mini-trial, as they said, on collateral matters. It's an issue of speed versus justice? Not at all, Your Honor. To talk about all these other things, did they occur, it would distract the jury from the issue that was at hand, whether the defendant had committed these offenses. We get into all these things about whether or not Lewis had done these bad things against Westerfield. And the day after this occurred, the trial court allowed the defendant to bring in testimony about these prior bad acts. And so, the defendant couldn't have been prejudiced. There was extensive testimony about these prior bad acts, especially even that Lewis had supposedly damaged Westerfield's car. There was an OP against Lewis, that they hated each other. So, all of this stuff came in through other witnesses for the purpose that the defendant belatedly says on appeal it was relevant for. So, we would argue there's no abuse of discretion. It was forfeited because the offer of proof was vastly insufficient. And it did not contain the things that, depending on appeal argues, the evidence would have showed and for the purpose that it would have been offered. And any error would have been harmless. And, therefore, defense counsel also wouldn't have been ineffective. So, unless this court has any further questions, we would simply ask you to refer. Thank you. Rebuttal? Thank you, Your Honors. I have just a few points on rebuttal. The state makes much of the fact that the timing of disclosure was after jury selection. We would argue that it's a reasonable inference from the record that this disclosure happened prior to jury selection. If you look at the supplemental record, and that supplemental record, page 10, the trial court included Kaylee Westerfield on the list of potential witnesses when it conducted voir dire. So, it's reasonable to assume that counsel disclosed Kaylee Westerfield. At whose request? At whose request? That's not clear from the record. The trial court asked for a list of potential witnesses, and then during voir dire, it read those as witnesses to the jury. So, another mystery on this record, counsel? Another mystery. Unfortunately, we didn't tie that one up. So, we would argue that this is one of those cases where the severe sanction should not have been imposed, especially when the state waited to argue prejudice until the next day after jury selection had been completed. It had an opportunity to argue prejudice on the day before. We'd also argue in the offer of proof, Your Honors, that the state knew that Kaylee Westerfield had testimony that was relevant to the occurrence witness, because, and I will quote, the state said, and now apparently Kaylee Westerfield is not only going to testify, but going to testify about collateral prior bad acts. So, the state knew that she was a potential witness for two possible purposes.  In addition, the state just argued that Kaylee Westerfield doesn't have a witness statement in the record, but it's clear in the offer of proof, and the state didn't contest, that Kaylee Westerfield made a statement on DVD, and that the state disclosed that statement to us during its discovery. So, they knew what Kaylee was going to say. Is that part of the record? It is. Her actual statement isn't part of the record, but the fact that she gave a statement to police, and that that was disclosed on the DVD to defense counsel is a part of the record. Do we know when that was given? We know it was given just after the occurrence. She actually gave two statements. One, she described what actually happened, and then the second statement she described the pattern of harassment. To what extent was, and does the record show, or can we make an inference to what extent her proposed testimony, which was subject to these representations by defense counsel, would have been consistent with her DVD statement? I think it is a reasonable inference that it would have been consistent, or defense counsel wouldn't have offered her as a witness for the defense. It's also reasonable to infer that she would have offered very helpful testimony to the defense,  I would also say that the state does not address the fact that the state, the current ASA in my client's case, was currently prosecuting Kaylee Westerfield. There's no possibility of prejudice, as Your Honors indicated in your questions, because he was currently engaged in that very trial of Kaylee Westerfield. He had to be prepared. He had every incentive to investigate those rebuttal witnesses. These cases had been severed for trial? I believe so, Your Honor. Does the record show when Westerfield's case was set to be tried? How much after this one, in other words? Well, I believe they were in the middle of trial. Ms. Westerfield's first day of trial was on March 4, 2013, I believe, and my client's trial occurred in April. So they had a long continuance in between her first day of trial and when the defense decided to present its case. So the state had actually concluded its entire case at the time of my client's trial, and that trial occurred in April. Again, March 4 was the first day of Kaylee Westerfield's trial. Finally, I would point out, Your Honors, that Kaylee decided, the state has conceded that the implication from the record is that Kaylee decided to forego her privilege against self-incrimination on the eve of trial. As a policy matter, it makes no sense for the trial court to impose the most severe sanction in this case, especially where Kaylee was a co-defendant and where she had to forego and go through a number of different hoops, more so than another witness, to decide to testify in this case. So for all of those reasons and the reasons stated in our brief, we ask that this court reverse my client's convictions. Are there no further questions? I'll submit the case for decision. Thank you. Is there any matter under advisement to await the readiness of the next case?